UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| STACEY RIVERS, DONNA LENOIR-MOORE, and TINA CORLEY<br><br>  Plaintiffs,<br>v.<br><br>CAPITAL ONE FINANCIAL<br><br>  Defendant. | Case No. 3:17-cv-1282<br><br>**PLAINTIFFS' ORIGINAL COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

STACEY RIVERS, DONNA LENOIR-MOORE, and TINA CORLEY ("Plaintiffs") bring this action against Defendant CAPITAL ONE FINANCIAL ("Defendant") to stop Defendant's practice of making illegal debt collection calls to the cellular telephones of Plaintiffs, and to obtain redress for injuries caused by Defendant's conduct. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## INTRODUCTION

1. "The right to be let alone is indeed the beginning of all freedom."[1] Plaintiffs bring this action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

2. Defendant is a big national bank that engages in reckless and aggressive debt collection practices which outright ignore controlling federal law, and the rights of the called parties.

3. Defendant repeatedly made unsolicited calls to Plaintiffs' cellular telephones in violation of the TCPA. Defendant made the unauthorized and illegal calls to Plaintiffs' cell phones

---

[1] *Public Utilities Commission v. Pollak*, 343 U.S. 451, 467 (1952) (Douglas, J., dissenting).

1

using an automatic telephone dialing system ("ATDS") or pre-recorded voice for the purpose of bullying Plaintiffs into paying an allegedly deficient balance. Defendant also called Plaintiffs after they clearly stated they did not wish to be called again.

## PARTIES

4. Plaintiff STACEY RIVERS is a natural person and Cedar Hill, TX.

5. Plaintiff DONNA LENOIR-MOORE is a natural person and citizen of Lewisville, TX.

6. Plaintiff TINA CORLEY is a natural person and citizen of Philadelphia, PA.

7. Defendant CAPITAL ONE BANK is a corporation organized under the laws of the State of Virginia. Defendant may be serving its registered agent, Corporation Service Company, 111 East Main Street, 16th Floor, Richmond, VA 23219.

8. Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

13. The Court has subject matter jurisdiction under 28 U.S.C. § 1331; this is a TCPA action.

14. The Court has personal jurisdiction over Defendant. Defendant has continuous and systematic contacts with this District through their telemarketing scheme and is essentially at home here. Defendant conducts significant, ongoing business in this District and purposefully availed itself to this District. The Court has specific personal jurisdiction over Defendant because

it targets this District with its wrongful, accused acts, and/or emanated those acts from this District. The exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.

15. Venue is proper in this District under 28 U.S.C. § 1391(b); a substantial part of the wrongful conduct giving rise to this lawsuit occurred in, was directed to, and/or emanated from this District.

## LEGAL BASIS FOR THE CLAIMS

### The TCPA

16. Congress enacted the TCPA in 1991 to address certain practices thought to be an invasion of consumer privacy and a risk to public safety. The TCPA and the Federal Communications Commission's ("FCC") implemented rules prohibit: (1) making telemarketing calls using an artificial or prerecorded voice to residential telephones without prior express consent; and (2) making any non-emergency call using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to a wireless telephone number without prior express consent. If the call includes or introduces an advertisement, or constitutes telemarketing, consent must be in writing.[2] Calls that include non-marketing messages require consent, but not written consent. The TCPA grants consumers a private right of action, with a provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and treble damages for each willful or knowing violation, as well as injunctive relief.

17. Since the TCPA's passage in 1991, the FCC has taken multiple actions implementing and interpreting the TCPA, and has issued numerous Declaratory Rulings clarifying

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(8).

specific aspects of the TCPA. The most recent, FCC Omnibus Order of July 10, 2015, (the "Order") provided further protection to consumers by, among other things, clarifying that ATDS is broadly defined, confirming liability attaches to calls made to the wrong number or reassigned number, and clarifying consumers may revoke consent through reasonable methods. *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, (July 10, 2015), available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order. The Order defines an "autodialer" as equipment/software that has the future capacity to dial randomly or sequentially. "In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities." The Order clarifies the meaning of "capacity" and that "any call" made using a device with the capacity to serve as an ATDS requires consent under the TCPA, even if the caller is not "actually…using those functionalities to place calls" at the time. *Derby v. AOL, Inc.*, No. 5:15-CV-00452-RMW, 2015 WL 5316403, at *3 (N.D. Cal. Sept. 11, 2015).

18. The Order also states that calls placed to the wrong number or a reassigned number are made with knowledge of the error after the first call; and consumers may revoke consent through any reasonable method, including orally: "[w]e clarify, however, that callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber. If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such;" "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities."

19. Furthermore, the TCPA established the National Do-Not-Call List, and also mandates all businesses that place calls for marketing purposes maintain an "internal" do-not-call list ("IDNC"). See 47 C.F.R. § 64.1200(d). The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]." *Id*. The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the National Do-Not-Call Registry. *Id.* at § 64.1200(d)(3), (6). Any company, or someone on the company's behalf, who calls a member of the company IDNC is liable to that person under the TCPA. The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

20. Finally, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

21. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

**FACTS APPLICABLE TO ALL PLAINTIFFS**

22. Defendant's debt collection campaign is a continuous course of conduct and a pattern of practice, conducted under a common policy or program. From at least 2015 and through 2016, Defendant engaged in an aggressive debt collection campaign ("Campaign") that targeted people across the nation. Plaintiffs were directly targeted by Defendant's Campaign.

23. Although Plaintiffs may live in different states, they share similar factual bases for Defendant's liability – marketing/debt collection pitch; lack of consent; use of an auto-dialer; targeting a cell phone; and loss of privacy, among others, all of which arise out of Defendant's Campaign.

## FACTS SPECIFIC TO PLAINTIFF STACEY RIVERS

24. Beginning around November 2016, Rivers began to receive calls from the number 800-946-0332, 800-903-3637, and 972-557-0099 numbers associated with Defendant. Since that time, Rivers has received more than 31 calls from Defendant.

25. Rivers received all calls described above on her cellular telephone assigned a number ending in -6893.

26. Defendant and/or third parties on Defendant's behalf, placed some, if not all of the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without Rivers's prior express written consent.

27. When Rivers answered the calls, she heard short beeps, an automated message, and then was connected with a live representative.

28. Rivers repeatedly told Defendant to stop calling. Yet, Defendant continued to call.

29. The purpose of the calls was to collect on a debt allegedly owed by Rivers to Defendant.

30. To the extent Rivers ever provided consent to be called by an ATDS, she revoked any such consent.

31. Rivers felt the calls were an invasion of her privacy and wanted Defendant to stop calling. Defendant ignored Rivers's multiple requests and continued to call her.

32. Based on the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Rivers believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

33. On information and belief, Defendant's ATDS called Rivers on every occasion.

34. The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

35. Rivers is the regular carrier and exclusive user of the cellular telephone assigned the number ending in -6893.

36. Defendant's calls were not for emergency purposes under 47 U.S.C. § 227(b)(1)(A)(i).

37. All calls Defendant made to Rivers violate 47 U.S.C. § 227.

### FACTS SPECIFIC TO PLAINTIFF DONNA LENOIR-MOORE

38. Beginning in 2016, Lenoir began to receive calls from, among other numbers, the number 800-365-2024, a number associated with Defendant. Since that time, Lenoir has received more than 2 unauthorized calls from Defendant.

39. Lenoir received all calls described above on her cellular telephone assigned a number ending in -6501.

40. Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1).

41. When Lenoir answered the calls, there was a pause and then a recording asking Lenoir to hold.

42. The purpose of the calls is to collect an allegedly past due debt owed by Lenoir to Defendant.

43. To the extent Lenoir ever gave her consent to be called by an ATDS, she revoked any such consent.

44. Lenoir felt the calls were an invasion of her privacy and wanted Defendant to stop calling. Defendant ignored Lenoir's requests and continued to call her.

45. Based on the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Lenoir believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

46. On information and belief, Defendant's ATDS called Lenoir on every occasion.

47. The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

48. Lenoir is the regular carrier and exclusive user of the cellular telephone assigned the number ending in -6501.

49. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

50. All calls Defendant made to Lenoir violates 47 U.S.C. § 227.

**FACTS SPECIFIC TO PLAINTIFF TINA CORLEY**

51. Beginning around February 2017, Corley began receiving calls from, among other nunbers, the number 800-955-7070, a number associated with Defendant. At the time Corley filed this lawsuit, she had received more than 2 calls from Defendant, sometimes multiple calls in a single day.

52. Corley received all calls described above on her cellular telephone assigned a number ending in -7236.

53. Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1).

54. To the extent Corley ever gave consent to be called by an ATDS, she revoked any such consent.

55. Corley felt the calls were an invasion of her privacy and wanted Defendant to stop calling. Defendant ignored Corley's requests and continued to call her.

56. Based on the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Corley believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

57. On information and belief, Defendant's ATDS called Corley on every occasion.

58. The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

59. Corley is the regular carrier and exclusive user of the cellular telephone assigned the number ending in -7236.

60. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

61. All calls Defendant made to Corley violate 47 U.S.C. § 227.

**FIRST CAUSE OF ACTION**
**ALL PLAINTIFFS**
(VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT,
47 U.S.C. § 227, *ET SEQ.*)

62. Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

63. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above cited

provisions of 47 U.S.C. § 227, *et seq.* and 47 C.F.R. §64.1200, *et seq.*

64.  As a result of Defendant's violations of 47 U.S.C. § 227, *et seq.*, and 47 C.F.R. §64.1200, *et seq.,* Plaintiffs are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

65.  Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION
## ALL PLAINTIFFS
### (KNOWING AND/OR WILLFUL VIOLATION OF
### THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*)

66.  Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

67.  The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq.* and 47 C.F.R. §64.1200, *et seq.*

68.  As a result of Defendant's violations of 47 U.S.C. § 227, *et seq.*, and 47 C.F.R. §64.1200, *et seq.* Plaintiffs are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

69.  Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## JURY DEMAND

70.  Plaintiffs demand a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

- An award of $500.00 in statutory damages, for each and every negligent

> violation, pursuant to 47 U.S.C. § 227, *et seq.*;

- An award of $1,500.00 in statutory damages, for each and every willful and/or knowing violation, pursuant to 47 U.S.C. § 227, *et seq.*;

- Preliminary and permanent injunctive relief enjoining Defendant, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unlawful calls made with automated dialing systems to cellular phones, and enjoining Defendant from engaging in abusive and oppressive collection practices as outlined in this Complaint.

Dated: May 12, 2017

Respectfully Submitted,

*/s/ W. Craft Hughes*
W. Craft Hughes
State bar No. 24046123
Jarrett L. Ellzey
State bar No. 24040864
Deola T. Ali
State bar No. 24071940
**HUGHES ELLZEY, LLP**
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335
E-Mail: craft@hughesellzey.com
            jarrett@hughesellzey.com
            deola@hughesellzey.com

Bryant A. Fitts
State bar No. 24040904
**FITTS LAW FIRM, PLLC**
2700 Post Oak Blvd., Suite 1120
Houston, Texas 77056
Phone (713) 871-1670
Fax (713) 583-1492
bfitts@fittslawfirm.com

Mark A. Alexander
State bar No. 01007500
**MARK A. ALEXANDER, P.C.**
5080 Spectrum Drive, Ste. 850
Addison, Texas 75001
Phone (972) 364-9700
Facsimile (972) 239-2244
mark@markalexanderlaw.com

**ATTORNEYS FOR PLAINTIFFS**